# IN THE UNITED STATES CIRCUIT COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

| | | |
|---|---|---|
| SMARTSKY NETWORKS, LLC, | ) | |
| | ) | |
| Plaintiff - Appellant, | ) | |
| | ) | |
| v. | ) | Case: 23-1058 |
| | ) | |
| GOGO BUSINESS AVIATION, LLC | ) | |
| and GOGO INC., | ) | |
| | ) | |
| Defendants - Appellees. | ) | |
| | ) | |

ON APPEAL FROM UNITED STATES DISTRICT COURT FOR THE DISTRICT OF
DELAWARE ORIGINATING CASE NO.: 1:22-CV-00266-GBW

## PLAINTIFF-APPELLANT SMARTSKY NETWORKS, LLC'S CORRECTED MOTION FOR LEAVE TO SUPPLEMENT RECORD ON APPEAL

Lance A. Lawson, P.E.
BURR & FORMAN, LLP
101 South Tyron Street, Suite 2610
Charlotte, NC 28280
(704) 347-1170
llawson@burr.com

Jack B. Blumenfeld
Rodger D. Smith II
MORRIS, NICHOLS, ARSHT &
TUNNELL LLP
1201 North Market Street
Post Office Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
rsmith@morrisnichols.com

Ryan M. Corbett
BURR & FORMAN, LLP
201 N. Franklin St, Suite 3200
Tampa, Florida 33602
(813) 221-2626
rcorbett@burr.com

*Attorneys for Appellant*
March 9, 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number**   23-1058

**Short Case Caption**   SmartSky Networks, LLC v. Gogo Business Aviation, LLC

**Filing Party/Entity**   SmartSky Networks, LLC

> **Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box**. Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 10/28/2022

Signature:   /s/ Lance A. Lawson

Name:   Lance A. Lawson

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| SmartSky Networks, LLC | | SmartSky Networks, LLC is wholly owned by SmartSky MidCo, LLC |
| | | SmartSky MidCo, LLC is wholly owned by SmartSky New HoldCo, LLC |
| | | No publicly held company owns 10% or more stock in SmartSky Networks, LLC |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐   None/Not Applicable           ☐     Additional pages attached

| Jack B. Blumenfeld<br>Morris, Nichols, Arsht & Tunnell LLP | Rodger Dallery Smith, II<br>Morris, Nichols, Arsht & Tunnell LLP | Sarah Elizabeth Simonetti<br>Morris, Nichols, Arsht & Tunnell LLP |
|---|---|---|
| | | |
| | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☑   None/Not Applicable           ☐     Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable           ☐     Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ........................................................... ii

**STATEMENT OF RELATED CASES**................................................1

**STATEMENT OF JURISDICTION**.......................................................2

**MOTION TO SUPPLEMENT THE RECORD ON APPEAL** ...........................3

   **ARGUMENT** .........................................................................7

    **I.** **THE LAW OF THE THIRD CIRCUIT APPLIES TO SUPPLEMENTING THE RECORD IN THIS CASE** ...........................................................8

    **II.** **THE COURT SHOULD TAKE JUDICIAL NOTICE OF ALL DOCUMENTS PRESENTED BY THIS MOTION BECAUSE THEY ARE ACCURATELY AND READILY DETERMINED FROM PUBLICLY-AVAILABLE SOURCES WHOSE ACCURACY CANNOT BE REASONABLY QUESTIONED**…...……9

      **A. The Court should take judicial notice of each document Gogo filed with the SEC last week (only four (4) business days ago on February 28, 2023) and public comments addressing the same** ...........................................................................10

      **B. The Court should take judicial notice of public statements made by Gogo's current CEO in an interview on a business-oriented podcast that is publicly available on the internet in both audio and transcribed form** ................................................16

   **CONCLUSION**................................................................21

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Acuna-Atalaya v. Newmont Mining Corp.*,
    765 F. App'x 811 (3d Cir. 2019) ......................................................................17

*ArcelorMittal Atlantique et Lorraine v. AK Steel Corp.*,
    908 F.3d 1267 (Fed. Cir. 2018)......................................................................9

*Astellas United States LLC v. Hospira, Inc.*,
    No. 2022-1878, 2022 U.S. App. LEXIS 35933, 2022 WL 17998229
    (Fed. Cir. Dec. 30, 2022) ..............................................................................9

*Bryant v. Avado Brands, Inc.*,
    187 F.3d 1271 (11th Cir. 1999) ....................................................................11

*Cabalceta v. Standard Fruit Co.*,
    883 F.2d 1553 (11th Cir. 1989) ......................................................................8

*Cangemi v. United States*,
    13 F.4th 115 (2d Cir. 2021) ..........................................................................16

*Centocor Ortho Biotech, Inc. v. Abbott Labs.*,
    636 F.3d 1341 (Fed. Cir. 2011)......................................................................9

*Couch v. Verizon Comm'ns., Inc.*,
    No. 20-2151, 2021 U.S. Dist. LEXIS 188637, 2021 WL 4476698
    (D.D.C. Sept. 20, 2021) ...............................................................................17

*Del. Valley Floral Grp., Inc. v. Shaw Rose Nets, LLC*,
    597 F.3d 1374 (Fed. Cir. 2010)......................................................................9

*Eli Lilly & Co. v. Actavis Elizabeth LLC*,
    No. 2010-1500, 2010 U.S. App. LEXIS 18449, at *2, 2010 WL 3374123, at *1
    (Fed. Cir. Aug. 31, 2010) .............................................................................12

*FTC v. Shire Viropharma, Inc.*,
    917 F.3d 147 (3d Cir. 2019).................................................................11, 16

*Genentech, Inc. v. Chiron Corp.*,
    112 F.3d 495 (Fed. Cir. 1999).............................................................8, 10, 12

*Glover v. Cohen,*
  No. 2021-2126, 2022 U.S. App. LEXIS 27773, 2022 WL 5082130
  (Fed. Cir. Oct. 5, 2022) ...................................................................8

*Golan v. Saada, --- U.S. ---,*
  142 S. Ct. 1880 (2022) ................................................................7, 8

*Goland v. Cent. Intelligence Agency,*
  607 F.2d 339 (D.C. Cir. 1978) (per curiam) ...................................8

*Hoganas AB v. Dresser Indus., Inc.,*
  9 F.3d 948 (Fed. Cir. 1993) ...........................................................12

*Howard v. Arconic Inc.,*
  395 F. Supp. 3d 516 (W.D. Pa. June 21, 2019) ........................12, 13

*Ieradi v. Mylan Labs., Inc.,*
  230 F.3d 594 (3d Cir. 2000) ...........................................................17

*In re Application of Adan,*
  437 F.3d 381 (3d Cir. 2006) .............................................................7

*In re Gold Res. Corp. Sec. Litig.,*
  957 F. Supp. 2d 1284 (D. Colo. 2013) ............................................13

*In re Morgan Stanley Information Fund Sec. Litig.,*
  592 F.3d 347 (2d Cir. 2010) ...........................................................10

*In re NAHC, Inc. Sec. Litig.,*
  306 F.3d 1314 (3d Cir. 2002) .........................................................11

*In re Resolute Energy Corp. Sec. Litig.,*
  No. 21-1412, 2022 U.S. App. LEXIS 2516, 2022 WL 260059
  (3d Cir. Jan. 27, 2022) ..............................................................16, 17

*Kos Pharms., Inc. v. Andrx Corp.,*
  369 F.3d 700 (Fed. Cir. 2004) ........................................................12

*Kramer v. Time Warner, Inc.,*
  937 F.2d 767 (2d Cir. 1991) ...........................................................12

*Landmark Screens, LLC v. Morgan, Lewis, & Bockius, LLP,*
  676 F.3d 1354 (Fed. Cir. 2012) ........................................................8

*Landy v. Fed. Deposit Ins. Corp.,*
  486 F.2d 139 (3d Cir. 1973) ...........................................................11

iii

*Massachusetts v. Westcott,*
    431 U.S. 322 (1977)...................................................................10

*Merck Sharp & Dohme Corp. v. Amneal Pharms. LLC,*
    881 F.3d 1376, 1382 (Fed. Cir. 2018) (same)...................................9

*Oran v. Stafford,*
    226 F.3d 275, 289 (3d Cir. 2000).................................8, 10, 11, 12

*Peters v. Delaware River Port Auth.,*
    16 F.3d 1346 (3d Cir. 1994).......................................................17

*Rapaport v. Barstool Sports, Inc.,*
    No. 18 Civ. 8783, 2021 U.S. Dist. LEXIS 59797, 2021 WL 1178240
    (S.D.N.Y. Mar. 29, 2021)...........................................................18

*Respironics, Inc. v. Invacare Corp.,*
    303 F. App'x 865 (Fed. Cir. 2008)................................................9

*Samson Energy Res. Co. v. SemCrude, L.P. (In re SemCrude, L.P.),*
    728 F.3d 314 (3d Cir. 2013)........................................................12

*Sapir v. Verback,*
    No.: 14-7331, 2016 U.S. Dist. LEXIS 15956, 2016 WL 554581
    (D.N.J. Feb. 10, 2016)...............................................................13

*Schmidt v. Skolas,*
    770 F.3d 241 (3d Cir. 2014)........................................................10

*Smartflash LLC v. Apple Inc.,*
    621 F. App'x 995 (Fed. Cir. 2015)...............................................12

*St. Clair Intellectual Prop. Consultants, Inc. v. Canon Inc.,*
    412 F. App'x 270 (Fed. Cir. 2011)...............................................12

*Standard Havens Prods., Inc. v. Gencor Indus.,*
    897 F.2d 511 (Fed. Cir. 1990)................................................10, 12

*Sweet v. City of Mesa*
    No. CV-17-00715-PHX-GMS, 2021 U.S. Dist. LEXIS 138040,
    2021 WL 3130335 (D. Ariz. July 23, 2021) .................................. 18

*Turner v. Wells,*
    879 F.3d 1254 (11th Cir. 2018) ...................................................16

*United States v. Ojai Valley Cmty. Hosp.,*
   No. CV 17-6972, 2018 U.S. Dist. LEXIS 239705, 2018 WL 6177257
   (C.D. Cal. July 30, 2018) ..................................................................18

*VirtualAgility Inc. v. Salesforce.com,*
   759 F.3d 1307 (Fed. Cir. 2014)........................................................12

*Winer Family Trust v. Queen,*
   503 F.3d 319 (3d Cir. 2007)..............................................................13

*Young v. Tesla, Inc.,*
   No. 1:21-cv-00917-JB-SCY, 2022 U.S. Dist. LEXIS 145747, 2022 WL 3355832
   (D.N.M. Aug. 15, 2022)......................................................................17

*Yusupov v. Att'y Gen. of U.S.,*
   650 F.3d 968 (3d Cir. 2011)..............................................................16

**Statutes**

28 U.S.C. § 1292 .....................................................................................2

28 U.S.C. § 1295 .....................................................................................2

28 U.S.C. § 1331 .....................................................................................2

28 U.S.C. § 2107 .....................................................................................2

35 U.S.C. § 271 .......................................................................................2

**Rules**

Fed. R. App. P. 4 .....................................................................................2

Fed. R. App. P. 10 ...............................................................................3, 7

Fed. R. Evid. 201 ............................................................................10, 16

**Other**

*Gogo Inc. (GOGO) Q4 2022 Earnings Call Transcript,*
   Seeking Alpha (Feb. 28, 2023, 3:23 P.M. EST) ..........................3, 5, 6, 14, 15

Gogo, Inc. Annual Report (Form 10-K) (Feb. 28, 2023)......................3, 4, 14

v

Gogo, Inc. Current Report 2022 Q4 (Form 8-K) (Feb. 28, 2023) ....................................................3

*Business Breakdowns: Oakleigh Thorne – Gogo: Internet for Private Jets*,
    Colossus (June 22, 2022) ..............................................................................6, 7, 18, 19, 20

## STATEMENT OF RELATED CASES

Undersigned counsel is unaware of any case pending in this or any other court that will directly affect or be directly affected by this Court's decision in the pending appeal.

50437024 v2

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1331 because this civil action alleges patent infringement under the patent statute, 35 U.S.C. § 271.

This Court has jurisdiction under 28 U.S.C. § 1292(c)(1) to hear this appeal of an order denying an injunction in a civil action arising under an Act of Congress relating to patents.  28 U.S.C. § 1292(a)(1); 28 U.S.C. § 1295(a)(1).

The district court entered an order denying a preliminary injunction on September 26, 2022.  A timely notice of appeal was filed on October 14, 2022.  28 U.S.C. § 2107(a); Fed. R. App. P. 4(a)(1)(A).

**MOTION TO SUPPLEMENT THE RECORD ON APPEAL**

Appellant SmartSky Networks, LLC ("SmartSky" or "Appellant"), pursuant to Federal Rule of Appellate Procedure 10(e)(2)-(3) and this Court's inherent equitable powers, moves the Court to supplement the record on appeal to include Gogo, Inc.'s ("Gogo") Annual Report (Form 10-K) (Feb. 28, 2023) ("2022 10-K") ("Exhibit A") and Gogo's 2022 Fourth Quarter Report (Form 8-K) (Feb. 28, 2023) ("2022 Q4 8-K") ("Exhibit B") filed with the United States Securities and Exchange Commission ("SEC"); the transcript of Gogo's 2022 Q4 Earnings Call (Feb. 28, 2023, 8:30 A.M. EST) ("Exhibit C"); and publicly-available statements made by Gogo's CEO, Oakleigh Thorne during a podcast interview on June 22, 2022 ("Exhibit D" and "Exhibit E"). Undersigned counsel has contacted counsel for Gogo, who has indicated it will oppose this motion.

Gogo's Response Brief pending before the Court cites inaccurate information pertaining to Gogo's share of the business aviation broadband connectivity market, and the effective lifespan of Gogo's equipment once installed on an aircraft. The information cited in Gogo's Response Brief is directly and unequivocally contradicted by the public filings made with the SEC and statements disclosed publicly to investors. Moreover, these statements cut directly to the heart of the issues on appeal—the size and scope of Gogo's dominant market share and the long-term relationship it purports to build with its customers and the aircraft on which its

equipment is installed , at the expense of SmartSky attempting enter the same market for providing broadband connectivity for business aviation aircraft. The 2022 10-K states that "Gogo is the world's largest provider of broadband connectivity services for the business aviation market. *We have served this market for more than 25 years*." Exhibit A, p. 5 (Appx. 9995) (Gogo, Inc., Annual Report, p. 5 (Form 10-K) (Feb. 28, 2023)) (emphasis added). Also from the 2022 10-K, Gogo reports that there are 24,700 business aviation ("BA") aircraft in the United States, of which only thirty (30) percent have broadband, or 7,410 aircraft. *Id.* at 7 (Appx. 9997). Gogo reports that it now has 6,935 BA aircraft online and equipped with their air-to-ground ("ATG") network, which is to say that Gogo's market share of the BA aircraft with broadband is approximately ninety-three (93) percent.[1] *Id.* at 38 (Appx. 10028). This is notably inconsistent with Gogo's characterization of its market share in its Response. *See* (Response p. 64.) As it turns out, during this pending suit, Gogo has increased its market share by some eight (8) percent since the end of 2021.[2] The information that Gogo presented to this Court (as well as the District Court) is

---

[1] Gogo's current (as of Dec. 31, 2022) market share calculation of business aviation aircraft with broadband connectivity is straightforward with the numbers reported by Gogo to the SEC: 6,935 business aviation aircraft with Gogo broadband equipment divided by the total of about 7,410 business aviation aircraft with any form of broadband connectivity (6,935/7,410 = 93.6%).

[2] *See* Appx. 1366 (noting Gogo had eighty-five (85) percent of broadband connected aircraft in the United States through its ATG network).

4

materially at odds with the information that Gogo reported to its investors, the U.S. Securities and Exchange Commission, and the general public.

Nor does it appear Gogo expects things to slow down any time soon. On Gogo's 2022 Q4 Earnings Call, also on February 28, 2023, Gogo's Chief Executive Officer, Oakleigh Thorne, noted the addition of 158 new "revenue producing AVANCE units," and "[a]dding additional AVANCE units online is central to our growth strategy." Exhibit C, p. 5 (Appx. 10385) (*Gogo Inc. (GOGO) Q4 2022 Earnings Call Transcript*, Seeking Alpha (Feb. 28, 2023, 3:23 P.M. EST), https://seekingalpha.com/article/4582985-gogo-inc-gogo-q4-2022-earnings-call-transcript (hereinafter "Q4 2022 Earnings Call"), at 5).[3] Moreover, Gogo's strategy "extends customer lifetimes by offering upgrades to new technologies like 5G and GBB that are easier and cheaper to execute than moving to competitor's solutions." *Id*. Thorne further reported that "the continued penetration of our AVANCE platform positions as well to *extend customer lifetimes* and drive free cash flow to invest in further strengthening our business and to return capital to shareholders." *Id*. at 10 (Appx. 10340).

On the same call, Gogo reported that it

delivered $3.8 million in equivalent revenue in the fourth quarter, a 34% increase year-over-year as we saw continuing very strong demand

---

[3] Pinpoint citations to the Q4 2022 Earnings Call are to the transcript included herewith as an exhibit.

for our AVANCE L3 and L5 products. We shipped a record 390 AVANCE units in the quarter and 1,334 for the year, a remarkable 50% year-over-year growth in AVANCE units shipped. . . . Our service margins were within our target range of 75% to 80% for '22, and we continue to expect service margins in the 75 plus percent range over a five year time horizon. As expected, equipment margins were down in the fourth quarter to [32%], 5% lower than the prior year period and 4% lower sequentially, driven by our strategic initiative to drive AVANCE penetration.

*Id.* at p. 12 (Appx. 10342). In addition, Gogo reported that it is lowering prices on its broadband equipment in order to increase "penetration", i.e., increase the number of business aviation aircraft equipped with Gogo's broadband equipment:

We expect revenue growth at a compound annual growth rate of approximately 17% from 2022 through 2027, with global broadband contributing to revenue beginning in 2025. . . . We expect annual adjusted EBITDA margin to be in the mid 40% range by 2027. This is slightly lower than prior expectations, driven by lower equipment margins to fund our strategic initiative of driving advanced penetration.

*Id.* at p. 17 (Appx. 10347).

In addition to reporting to the SEC Gogo's 2022 Annual and Fourth Quarter 2022 results, Gogo's CEO, Mr. Thorne, gave a public interview in 2022 on a business podcast to discuss both Gogo's performance and its business strategies:

[W]e [Gogo] don't have long-term contracts with our customers, but we have long-term relationships with aircraft. So when our equipment's put on an aircraft, it's on there. . . . Right now, I think the average is close to 20 years, and that's almost since the beginning of the company. So like almost nobody's ever taken it off. . . . And that's because the switching costs are high and you really need to want to make a change. Now, look, we're lowering switching costs in the future with AVANCE in terms of adding capability, but not switching.

6

. . .

> [An aircraft manufacturer or owner] would have to rip us out to make room for the competitor, which isn't the hard part. The hard part is you're installing a whole new system with its own box units that have to go in and have special places to go and new wiring, new WiFi access points in the plane, new antennas on the outside. So you're talking about hundreds of thousands of dollars in terms of doing that. And in terms of these upgrades where you're looking at something much less than half that cost, you're really not going to want to leave us in order to do that. It just isn't going to be economic.

Exhibit D, 20:12, p. 4 (Appx. 10412) (*Business Breakdowns: Oakleigh Thorne – Gogo: Internet for Private Jets*, Colossus (June 22, 2022), https://www.joincolossus.com/episodes/90983440/thorne-gogo-internet-for-private-jets?tab=transcript (Pinpoint citation at 20:12, Transcript p. 4) (hereinafter, "Thorne Podcast")).

This information and facts recently reported by Gogo and its CEO are relevant to this appeal because they are at odds with Gogo's alleged facts and arguments presented to both the District Court and this Court, including that SmartSky will not suffer irreparable harm absent a preliminary injunction.

## ARGUMENT

In appropriate cases, Federal appellate courts have the power to supplement the record on appeal with evidence that has not been reviewed by the district court. Fed. R. App. P. 10(e); *In re Application of Adan*, 437 F.3d 381, 388 n. 3 (3d Cir. 2006), *abrogated on other grounds by Golan v. Saada*, --- U.S. ---, 142 S. Ct. 1880

7

(2022) (observing that a circuit court will consider new evidence on appeal under circumstances "such as those that render the case moot *or alter the appropriateness of injunctive relief, . . . or facts of which a court may take judicial notice*." (emphasis added) (citing *Goland v. Cent. Intelligence Agency*, 607 F.2d 339, 370 n. 7 (D.C. Cir. 1978) (per curiam) (observing specifically that appellate courts will supplement the record under circumstances "alter[ing] the appropriateness of injunctive relief" and for "facts which may be judicially noticed."))); *see also Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000) (Third Circuit taking judicial notice of filings with the SEC on appeal and not presented before the district court); *Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495, 497 n. 1 (Fed. Cir. 1999) (granting motion for leave to supplement record with materials before the Board of Patent Appeals and Interferences but not the district court); *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1554-55 (11th Cir. 1989) (permitting supplementation of the record on appeal).

## I. THE LAW OF THE THIRD CIRCUIT APPLIES TO SUPPLEMENTING THE RECORD IN THIS CASE.

The Federal Circuit applies the law of the regional circuit to "issues of procedural law that do not implicate patent law." *Glover v. Cohen*, No. 2021-2126, 2022 U.S. App. LEXIS 27773, at *3, 2022 WL 5082130, at *2 (Fed. Cir. Oct. 5, 2022) (citing *Landmark Screens, LLC v. Morgan, Lewis, & Bockius, LLP*, 676 F.3d 1354, 1361 (Fed. Cir. 2012)) (applying Third Circuit law to procedural issues).

Thus, the Federal Circuit "review[s] evidentiary rulings not unique to patent law . . . under the law of the regional circuit." *Astellas United States LLC v. Hospira, Inc.*, No. 2022-1878, 2022 U.S. App. LEXIS 35933, at *7, *13-20, 2022 WL 17998229, at *3 (Fed. Cir. Dec. 30, 2022) (citing *Del. Valley Floral Grp., Inc. v. Shaw Rose Nets, LLC*, 597 F.3d 1374, 1379 (Fed. Cir. 2010)); *Centocor Ortho Biotech, Inc. v. Abbott Labs.*, 636 F.3d 1341, 1347 (Fed. Cir. 2011) (applying Fifth Circuit law regarding review of denial of Motion for Judgment as a Matter of Law); *ArcelorMittal Atlantique et Lorraine v. AK Steel Corp.*, 908 F.3d 1267, 1277 (Fed. Cir. 2018) (applying Third Circuit law when reviewing district court's discovery decisions); *Merck Sharp & Dohme Corp. v. Amneal Pharms. LLC*, 881 F.3d 1376, 1382 (Fed. Cir. 2018) (same); *Respironics, Inc. v. Invacare Corp.*, 303 F. App'x 865, 877 (Fed. Cir. 2008) (applying Third Circuit law when reviewing district court's evidentiary rulings).

The issues pertaining to this Motion to Supplement the Record on Appeal are all procedural and evidentiary in nature; none of the documents raised or addressed in this motion are specific to patent issues. Accordingly, the law of the regional circuit applies, which in this case is the Third Circuit where the District of Delaware sits.

## II. THE COURT SHOULD TAKE JUDICIAL NOTICE OF ALL DOCUMENTS PRESENTED BY THIS MOTION BECAUSE THEY ARE ACCURATELY AND READILY DETERMINED FROM PUBLICLY-AVAILABLE SOURCES WHOSE ACCURACY CANNOT BE REASONABLY QUESTIONED.

Under Federal Rule of Evidence 201, a court may take notice of an adjudicative fact not subject to reasonable dispute because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *Oran*, 226 F.3d at 289 (taking judicial notice on appeal of filings before the SEC). Public records are nearly always subject to judicial notice because they are inherently capable of accurate and ready review. *Genentech*, 112 F.3d at 497, n. 1 (interference records); *Standard Havens Prods., Inc. v. Gencor Indus.*, 897 F.2d 511, 514, n. 3 (Fed. Cir. 1990) (citing *Massachusetts v. Westcott*, 431 U.S. 322, 323 n. 2 (1977)) (records before the United States Patent and Trademark Office).

### A. The Court should take judicial notice of each document Gogo filed with the SEC last week (only four (4) business days ago on February 28, 2023) and public comments addressing the same.

For more than two decades, the Third Circuit, and other sister circuits, have ruled that public filings with the SEC are subject to judicial notice, including while on appeal. *Oran*, 226 F.3d at 289; *see also Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (taking judicial notice and stating, "Other[] [documents], like the SEC filings attached by a number of the defendants, are matters of public record of which the court can take judicial notice."); *In re Morgan Stanley Information Fund Sec. Litig.*, 592 F.3d 347, 354 n. 5 (2d Cir. 2010) ("We may take judicial notice of the full contents of the SEC's filings relating to this enforcement action because . . .

10

these proceedings are a matter of public record."); *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002) (affirming district court's judicial notice of documents filed with the SEC); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1277 (11th Cir. 1999) (finding "documents publicly filed with the SEC, to be proper subjects for judicial notice").

Moreover, the Third Circuit has clarified that courts may take judicial notice of facts found within SEC filings, such as a Form 8-K. *FTC v. Shire Viropharma, Inc.*, 917 F.3d 147, 151 n. 5 (3d Cir. 2019) (taking judicial notice of the fact that the defendant develops, manufactures, and markets certain drugs from the defendant's SEC filings).

Filings or developments occurring after judgment being appealed are properly subject to judicial notice. *E.g.*, *Oran*, 226 F.3d at 289; *Landy v. Fed. Deposit Ins. Corp.*, 486 F.2d 139, 150-51 (3d Cir. 1973).

The Third Circuit's analysis in *Oran* is instructive. In that case, the appellants requested that the Third Circuit take judicial notice of the appellees' compensation levels and total direct stockholdings at the time of the trades, arguing that the information is a matter of public record from documents filed with the SEC. 226 F.3d at 289. In taking judicial notice of the publicly-filed documents, the Third Circuit held "the documents are required by law to be filed with the SEC, and no

11

serious questions as to their authenticity can exist." *Id*. (quoting *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)).

The Federal Circuit likewise routinely takes judicial notice of other, similar public documents filed with federal agencies subject to penalty of perjury or duties of candor.   For example, this Court has taken judicial notice of  records filed in the United States Patent and Trademark Office, *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 705 (Fed. Cir. 2004) (citing *Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 954 n. 27 (Fed. Cir. 1993)); *Standard Havens Prods.*, 897 F.2d at 514; post-appeal developments, *Smartflash LLC v. Apple Inc.*, 621 F. App'x 995, 1000 (Fed. Cir. 2015); patents and patent applications, *Eli Lilly & Co. v. Actavis Elizabeth LLC*, No. 2010-1500, 2010 U.S. App. LEXIS 18449, at *2, 2010 WL 3374123, at *1 (Fed. Cir. Aug. 31, 2010); and interference records, *Genentech*, 112 F.3d at 497.[4] Along with SEC filings, quarterly reports, earnings calls, and transcripts of earnings calls are routinely accepted through judicial notice. *E.g.*, *Samson Energy Res. Co. v. SemCrude, L.P. (In re SemCrude, L.P.)*, 728 F.3d 314, 326 n. 11 (3d Cir. 2013) (taking judicial notice of quarterly report and data reported therein); *Howard v.*

---

[4] The Federal Circuit has also taken judicial notice of a motion to amend filed before the Patent Trial and Appeal Board, *VirtualAgility Inc. v. Salesforce.com*, 759 F.3d 1307, 1312-13 (Fed. Cir. 2014); reexamination records, *St. Clair Intellectual Prop. Consultants, Inc. v. Canon Inc.*, 412 F. App'x 270, 275 (Fed. Cir. 2011); and a patent itself, *Hoganas AB*, 9 F.3d at 954.

*Arconic Inc.*, 395 F. Supp. 3d 516, 529 n. 1 (W.D. Pa. June 21, 2019) (taking judicial notice of earnings call); *In re Gold Res. Corp. Sec. Litig*., 957 F. Supp. 2d 1284, 1293 (D. Colo. July 15, 2013), *aff'd*, 776 F.3d 1103 (10th Cir. 2015) (taking judicial notice of earnings call); *Sapir v. Verback*, No.: 14-7331, 2016 U.S. Dist. LEXIS 15956, *2 n. 1, 2016 WL 554581, at *1, n. 1 (D.N.J. Feb. 10, 2016) (recognizing that "SEC filings, press releases, and earnings call transcripts" may be judicially noticed) (citing *Winer Family Trust v. Queen*, 503 F.3d 319, 327 (3d Cir. 2007)).

Here, SmartSky seeks, among other things, to supplement the record with publicly-available documents Gogo filed with the SEC only last week regarding its financial performance and its sales and market share in providing broadband equipment and connectivity services to the business aviation market. In fact, through its website, Gogo makes available to the public – and apparently anyone with access to the internet – nearly every document it files with the SEC: https://ir.gogoair.com/financial-information/sec-filings. As will be shown below, the documents that Gogo filed last week are directly relevant to factors to be considered and weighed concerning the irreparable harm issue and SmartSky's request for a preliminary injunction before this Court.

For example, the documents relate to Gogo's market share of business aviation aircraft with broadband connectivity, Gogo's ongoing sales of its accused infringing 5G system and required component parts, and the lifespan of Gogo's

equipment once installed on business aviation aircraft in the U.S. Gogo's filings with the SEC last week included the following reported information:

- Gogo reported that in 2022, its number of aircraft with its broadband connectivity equipment installed increased to 6,935. With these additional aircraft online, Gogo has increased its national market share of business aviation aircraft with broadband connectivity to about 93%. Exhibit A, pp. 7, 38 (Appx. 9997, 10028) (Gogo, Inc., Annual Report, pp. 7, 38 (Form 10-K) (Feb. 28, 2023)).[5]

- Gogo reported that it has already sold about 200 of its 5G broadband systems that SmartSky is accusing of infringing SmartSky's patent claims in this case. Exhibit C, p. 8 (Appx. 10388) (Q4 2022 Earnings Call Tr., p. 8).

- Gogo reported that in the Fourth Quarter of 2022, it approximately tripled *its total number of sales of its infringing 5G product from 60 to about 200*. Exhibit C, p. 8 (Appx. 10388) (Q4 2022 Earnings Call Tr., p. 8) ("[W]e have 105 end customers that have signed up for pre-provisioning promotions, and we have 92 orders from dealers. . . that is a big jump from the 60 orders we had on our Q3 call.").

- Gogo reported that it has approximately 2,100 business aviation aircraft currently with its AVANCE L5 units installed. Exhibit A, p. 7 (Appx. 9997) (Gogo, Inc., Annual Report, p. 7 (Form 10-K) (Feb. 28, 2023)). Gogo AVANCE L5 units are required components of Gogo's accused 5G system.

---

[5] *See* notes 1 and 2, *supra*, for calculation of Gogo's market share of business aviation in the U.S. that currently have broadband connectivity.

14

- Gogo reported and confirmed that it's infringing 5G system delivers data up to 10 times faster than its legacy Air-To-Ground system. Exhibit C, p. 8 (Appx. 10388) (Q4 2022 Earnings Call Tr., p. 8).
- Gogo reported that in 2022 it had record total revenue of $404 Million. Exhibit C, p. 8 (Appx. 10388) (Q4 2022 Earnings Call Tr., p. 8).

The information above reported by Gogo last week relates directly to the issues on appeal in this case, and in particularly regarding whether Gogo's infringement of SmartSky's patents by selling and offering to sell Gogo 5G and it component parts are causing irreparable harm to SmartSky through, for example, lost sales and lost market share.  Gogo argued in its Response that any irreparable harm to SmartSky from lost sales or lost market share was at best speculative or not imminent.  Gogo also touted that the district court referred to Gogo's infringing 5G system as "yet-to-be-released." (Response at 63-65.)  Of course, the information noted above that Gogo reported last week in its filings with the SEC directly conflict with the arguments and Gogo's version of the facts presented in its Response.  So this information is highly relevant to the issues before this Court.

As recognized through a long line of cases in the Third Circuit, because Gogo filed these materials with the SEC only last week, under signature of its corporate executives, and in accordance with the rules and regulations of the SEC, and because Gogo's filings with the SEC are publicly available and relevant, this Court should take judicial notice of the information and facts reported and contained therein. *Shire*

15

*Viropharma,* 917 F.3d at 151 n. 5 ("We take judicial notice of this fact – which is not in the complaint – from Shire's Form 8-K filings with the Securities Exchange Commission.").[6]

**B. The Court should take judicial notice of public statements made by Gogo's current CEO in an interview on a business-oriented podcast that is publicly available on the internet in both audio and transcribed form.**

In addition to documents filed with the SEC or other government entities, courts routinely take judicial notice of publicly-available interviews that are recorded in audio, video, or written/transcribed formats. *E.g.*, *Yusupov v. Att'y Gen. of U.S.*, 650 F.3d 968, 985 n. 23 (3d Cir. 2011) (taking judicial notice of a website); *see also Cangemi v. United States*, 13 F.4th 115, 124 n.4 (2d Cir. 2021) (taking judicial notice of a website); *Turner v. Wells*, 879 F.3d 1254, 1272 n. 5 (11th Cir. 2018) (taking judicial notice of videos produced or articles written about an individual).

Likewise, it is long-standing law in the Third Circuit that courts may take judicial notice of news articles. *In re Resolute Energy Corp. Sec. Litig.*, No. 21-1412, 2022 U.S. App. LEXIS 2516, at *5, 2022 WL 260059, at *2 n. 7 (3d Cir. Jan. 27,

---

[6] To the extent the Court is not inclined to take judicial notice of the facts contained within these materials, SmartSky would request that the Court supplement the record and accept these as statements made by Gogo as materially inconsistent with its arguments presented before the District Court and before this Court in its Response Brief. *See* Fed. R. Evid. 201(b).

2022) (taking judicial notice of market price as reflected in a contemporaneous *Reuters* article); *Acuna-Atalaya v. Newmont Mining Corp*., 765 F. App'x 811, 813-814 n.2, n.3, n.4, n.5 (3d Cir. 2019) (taking judicial notice of various online news articles, including phone conversations among Peruvian judges and judicial officials and a statement by the president of Peru); *Ieradi v. Mylan Labs., Inc.*, 230 F.3d 594, 598 n.2 (3d Cir. 2000) (taking judicial notice of newspaper articles, even when the articles were not before the district court); *Peters v. Delaware River Port Auth*., 16 F.3d 1346, 1357 (3d Cir. 1994) (taking judicial notice of newspaper accounts that quoted written statements from the Governor of New Jersey).

Podcasts, which essentially are newspaper or magazine articles but instead of being on a publicly-available printed medium, they are publicly available on, for example, the internet or mobile phone applications.  Because podcasts interviews are publicly-available and are ubiquitous in the U.S., federal courts throughout the nation are routinely taking judicial notice of podcasts. *Couch v. Verizon Comm'ns., Inc.*, No. 20-2151, 2021 U.S. Dist. LEXIS 188637, at *3-5, n. 4, 2021 WL 4476698, at *1-2, n. 4 (D.D.C. Sept. 20, 2021) (granting motion to take judicial notice of transcript of podcast episode); *Young v. Tesla, Inc*., No. 1:21-cv-00917-JB-SCY, 2022 U.S. Dist. LEXIS 145747, at *4, n. 1, 2022 WL 3355832, at *2, n. 1 (D.N.M. Aug. 15, 2022) (Magistrate Judge Proposed Findings and Recommended Disposition recommending that court grant motion for judicial notice of podcast

interview transcript); *Sweet v. City of Mesa*, No. CV-17-00715-PHX-GMS, 2021 U.S. Dist. LEXIS 138040, at *6, n. 1, 2021 WL 3130335, at *2, n. 1 (D. Ariz. July 23, 2021) (taking judicial notice of eight podcast episodes to indicate what was in the public realm); *Rapaport v. Barstool Sports, Inc*., No. 18 Civ. 8783, 2021 U.S. Dist. LEXIS 59797, at *57, n. 22, 2021 WL 1178240, at *22, n. 22 (S.D.N.Y. Mar. 29, 2021) (taking judicial notice of online radio broadcast); *United States v. Ojai Valley Cmty. Hosp.*, No. CV 17-6972, 2018 U.S. Dist. LEXIS 239705, at *2, 2018 WL 6177257, at *1, n. 1 (C.D. Cal. July 30, 2018) (taking judicial notice of podcast transcript).

In addition to the materials discussed in Section II(A), *supra*, SmartSky also requests that the Court take judicial notice of the publicly-available podcast (the "Business Breakdown" podcast) of the business interview of Gogo's CEO, Mr. Oakleigh Thorne that occurred in 2022 and after the briefing closed on SmartSky's Motion for Preliminary Injunction. Indeed, Mr. Thorne routinely conducts these business interviews that are made publicly available through various media outlets, including interviews available on the internet and in business aviation-related magazines. Appx. 276 – 316; Appx. 1397 – 1447. Today, the entire podcast business interview of Gogo's CEO that is the subject of this motion is publicly available on the internet in both transcribed and audio format. *See* Exhibits D and E.

SmartSky is asking the Court to take judicial notice of the publicly-available podcast to show that the statements made by Gogo's CEO are, at a minimum, inconsistent with, if not materially different from, a number of the arguments and factual information Gogo presented to this Court in its Response. *See* (Response p. 63–68.) For example, Gogo denied that its market share of the business aviation aircraft with broadband connectivity was anywhere near the 85% that its CEO stated publicly in November 2021. (Response p. 64.) Gogo also denied that it has an at least 17-year average equipment lifetime once its in-flight connectivity equipment is installed on an aircraft and did so despite the public statements made by its CEO confirming the at least 17-year average. (Response p. 65.) Gogo also misleadingly asserted that it could not have an average equipment lifetime of 17 years because it has only been providing ATG service for 14 years. *Id*. Gogo also challenged the 17-year equipment lifetime because it relies on 5-year projections. *Id*. In addition, SmartSky respectfully asks the Court to take judicial notice of the business podcast to show that statements made by Gogo's CEO, while inconsistent with its court filings, are consistent with pertinent information that Gogo reported to and filed with the SEC and disclosed to its investors, shareholders, and the public just last week.

For example, Mr. Thorne has affirmed that the average lifetime of Gogo's equipment on a business aviation aircraft in the U.S. is about 20 years and that essentially once Gogo's equipment is installed, "almost nobody's ever taken it off":

> [W]e have *long-term relationships with aircraft. So when our equipment's put on an aircraft, it's on there.* . . Right now, *I think **the average is close to 20 years**, and that's almost since the beginning of the company. **So like almost nobody's ever taken it off**.* And that's because the switching costs are high and you really need to want to make a change.

Exhibit D, 20:12, p. 4 (Appx. 10412) (Thorne Podcast, 20:12 (Transcript p. 4)) (emphasis added).

Gogo also inferred in its Response that switching costs for Gogo customers to switch to SmartSky were not an obstacle for potential SmartSky customers. (Response p. 65-66.) But when asked whether the switching costs for a Gogo customer to switch to a competitor's broadband service like SmartSky's patented network would be substantial, Mr. Thorne affirmed that they would be in the hundreds of thousands of dollars:

> They would be. First of all, they'd have to rip us out to make room for the competitor, which isn't the hard part. The hard part is you're installing a whole new system with its own box units that have to go in and have special places to go and new wiring, new WiFi access points in the plane, new antennas on the outside. So you're talking about hundreds of thousands of dollars in terms of doing that. And in terms of these upgrades where you're looking at something much less than half that cost, you're really not going to want to leave us in order to do that. It just isn't going to be economic.

Exhibit D, 21:00, p. 4 (Thorne Podcast, 21:00 (Transcript p. 4)). The expected price to switch to a competitor (such as SmartSky) for an ATG system would be approximately $300,000.00. *Id*. at 21:49, p. 5 (Appx. 10413) (Transcript p. 5).

None of the information should come as a surprise to Gogo, as it is all contained in public filings or public statements that it has made, through its officers, to investors, shareholders, the investing public, and business community at large. Thus, the Court's taking judicial notice of these materials will not unfairly prejudice Gogo.

## CONCLUSION

For these reasons, SmartSky respectfully submits that this case falls into the category of cases that require supplementation of the record while on appeal. Supplementation is particularly appropriate here given it is an appeal of a denial of a preliminary injunction with a limited factual record, and it has been more than a year since SmartSky filed its Motion for Preliminary Injunction and more than nine (9) months since briefing closed in the district court. As shown above by Gogo's reports and filings to the SEC and interviews its CEO has given to the public and business community, Gogo has increased its sales of its infringing product and component parts, and therefore its dominant market share. And it has made statements that support the evidence presented concerning the extended lifetime (over 17 years) of Gogo's broadband services equipment once installed on a business aviation aircraft. Because SmartSky asserts that it is being irreparable harm in the relevant market by Gogo's infringing activities, this Court should take judicial notice of Gogo's recent reports in order to make an informed decision on this appeal

regarding irreparable harm to SmartSky.    Accordingly, SmartSky respectfully requests that the Court grant its Motion to Supplement the Record on Appeal.


Date: <u>March 9, 2023</u>                          Respectfully submitted,

/s/ Lance A. Lawson
Lance A. Lawson
BURR & FORMAN, LLP
101 South Tyron Street, Suite 2610
Charlotte, NC 28280
(704) 347-1170
llawson@burr.com

Ryan M. Corbett
BURR & FORMAN, LLP
201 N. Franklin St, Suite 3200
Tampa, Florida 33602
(813) 221-2626
rcorbett@burr.com

Jack B. Blumenfeld
Rodger D. Smith II
1201 North Market Street
P.O. Box 1347
Wilmington DE 19899
(302) 658-9200
blumenfeld@morrisnichols.com
rsmith@morrisnichols.com

*Attorneys for Appellant-Plaintiff*
*SmartSky Networks LLC*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on March 9, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, and that a copy of the foregoing will be served on counsel for Defendants listed below via the Court's ECF system:

> Stephanie P. Koh, Esquire
> Nathaniel C. Love, Esquire
> Julia G. Tabat, Esquire
> SIDLEY AUSTIN LLP
> One South Dearborn
> Chicago, IL 60603
>
> *Attorneys for Appellees-Defendants*

I further certify that, upon acceptance and request from the Court, the required paper copies of the foregoing will be deposited with Federal Express for delivery to the Clerk, UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT, 717 Madison Place, N.W., Washington, D.C. 20439.

> */s/   Lance A. Lawson*
> Lance A. Lawson
> BURR & FORMAN, LLP
> 101 South Tyron Street, Suite 2610
> Charlotte, NC 28280
> (704) 347-1170
> llawson@burr.com
>
> Ryan M. Corbett
> BURR & FORMAN, LLP
> 201 N. Franklin St, Suite 3200
> Tampa, Florida 33602

(813) 221-2626
rcorbett@burr.com

Jack B. Blumenfeld
Rodger D. Smith II
1201 North Market Street
P.O. Box 1347
Wilmington DE 19899
(302) 658-9200
blumenfeld@morrisnichols.com
rsmith@morrisnichols.com

*Attorneys for Appellant-Plaintiff
SmartSky Networks LLC*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This motion complies with the type-volume limitations of Fed. Cir.

R. 32(a).  This brief contains <u>5,093</u> words, excluding the parts of the brief

exempted by Fed. R. App. P. 32(f) and Fed. R. 32(b).

2.      The motion complies with the typeface requirements of Fed. R. App.

P. 32(a)(5) or Federal Circuit Rule 28.1 and the type style requirements of Fed. R.

App. P. 32(a)(6) because this brief has been prepared in a proportionally-spaced

typeface using Microsoft Word 2016 in 14-point Times New Roman font.

Dated:  March 9, 2023

*/s/*   Lance A. Lawson
Lance A. Lawson
BURR & FORMAN, LLP
101 South Tyron Street, Suite 2610
Charlotte, NC 28280
(704) 347-1170
llawson@burr.com

Ryan M. Corbett
BURR & FORMAN, LLP
201 N. Franklin St, Suite 3200
Tampa, Florida 33602
(813) 221-2626
rcorbett@burr.com

Jack B. Blumenfeld
Rodger D. Smith II
1201 North Market Street
P.O. Box 1347
Wilmington DE 19899
(302) 658-9200
blumenfeld@morrisnichols.com
rsmith@morrisnichols.com

*Attorneys for Appellant-Plaintiff*
*SmartSky Networks LLC*